UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 27, 2014

LETTER TO COUNSEL:

    RE:    *Samuel Oliver McGinnis v. Commissioner, Social Security Administration*;
            Civil No. SAG-13-1877

Dear Counsel:

On June 26, 2013, the Plaintiff, Samuel Oliver McGinnis, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I will deny Mr. McGinnis's motion and grant the Commissioner's motion. This letter explains my rationale.

Mr. McGinnis filed a claim for SSI on May 18, 2009, and a claim for DIB on January 6, 2010, alleging in both a disability onset date of April 1, 2006. (Tr. 12, 164-72). His claims were denied initially and on reconsideration. (Tr. 81-85, 86-89). A hearing was held on March 2, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 29-57). Following the hearing, on March 26, 2012, the ALJ determined that Mr. McGinnis was not disabled during the relevant time frame. (Tr. 12-23). The Appeals Council denied Mr. McGinnis's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. McGinnis suffered from the severe impairments of degenerative disc disease, status post spinal fusion, and right hand weakness. Despite these impairments, the ALJ determined that Mr. McGinnis retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can sit, stand and walk for 6 hours in an 8-hour day. He can never kneel, crouch, crawl or climb ladders, ropes, or scaffolds. He can occasionally bend but not more than 60 degrees at the waist. He cannot reach above shoulder level with the dominant shoulder extremity. He cannot use dominant hand for overhead reaching and cannot use dominant hand for more than one hour in an 8-hour day. He must avoid work with hazardous moving machinery or unprotected heights. He is limited to unskilled work.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that

Mr. McGinnis could perform jobs existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 22-23).

Mr. McGinnis essentially presents two arguments on appeal. First, Mr. McGinnis argues that the ALJ failed to fully consider the opinions of his treating and examining physicians. Second, Mr. McGinnis takes issue with the ALJ's finding that he is not disabled because he can perform the jobs of escort vehicle driver and surveillance system monitor. It is Mr. McGinnis's position that his medical record demonstrates functional limitations that would preclude work in these positions. Each argument is addressed in turn.

First, Mr. McGinnis disagrees with the weight that the ALJ assigned to the opinion of Dr. Nwachinemere. Pl.'s Mot. 14-15. Mr. McGinnis contends that Dr. Nwachinemere is a treating physician, and that the ALJ failed to discuss the factors relevant to the proper assignment of weight. *Id.* The ALJ "discounted" Dr. Nwachinemere's Physical RFC Questionnaire, finding that she provided "no longitudinal treatment" and "had no test reports upon which to base his [sic] opinion." (Tr. 19). It is unclear whether Dr. Nwachinemere qualifies as a treating physician, as she examined Mr. McGinnis only once before opining on his ability to work. *See* (Tr. 470-72) (office treatment records dated February 23, 2012); (Tr. 481-83) (Physical RFC Questionnaire completed by Dr. Nwachinemere, dated March 6, 2012). Social Security regulations define a treating physician as "a medical professional that examines a patient on several occasions over a long period of time." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 648 (D. Md. 1999). Opinions from "treating sources" are given more weight, in part because, "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). It is doubtful that Dr. Nwachinemere obtained an accurate longitudinal picture of Mr. McGinnis's impairments during the course of one month.

Even if this Court were to accept Mr. McGinnis's argument that Dr. Nwachinemere is a treating physician, remand would not be appropriate because the ALJ's assignment of weight is supported by substantial evidence. The ALJ correctly considered the treatment relationship between Dr. Nwachinemere and Mr. McGinnis, and the degree to which her opinion was supported by relevant evidence. Both are factors that the ALJ must apply in his evaluation of medical opinion evidence not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Moreover, it is not necessary for an ALJ to recite each factor concerning weight, so long as the "order indicates consideration of the all pertinent factors." *Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001). The ALJ noted that Dr. Nwachinemere had a brief treatment history with Mr. McGinnis, and that her opinion lacked the support of "test reports." (Tr. 19). Dr. Nwachinemere opined that Mr. McGinnis's impairments would cause him to be absent more than three times a month, and that he would require four to five rest periods during an eight-hour shift. (Tr. 482). She also stated that Mr. McGinnis could sit and stand no more than twenty minutes at a time, and that he could sit, stand, or walk, less than two hours in an eight-hour day. (Tr. 482-83). However, Dr. Nwachinemere also stated that Mr. McGinnis's prognosis was "unknown," and that she needed an MRI of his cervical spine "to assess [his] current condition." (Tr. 481). Her inability to fully evaluate Mr. McGinnis's impairments absent an MRI, coupled

with a treatment history of less than one month, provides substantial evidence for the ALJ's assignment of less weight.

The ALJ also relied on substantial evidence in according Dr. Aung's opinion "little weight." (Tr. 21).[1] The ALJ reasoned that Dr. Aung examined Mr. McGinnis only once—the day that she delivered her opinion in the Medical Report Form 402B. *Id.* The ALJ also noted that Dr. Aung's opinion was not supported by laboratory findings and was "inconsistent with the documentary evidence." *Id.* I agree. Dr. Aung concluded that Mr. McGinnis could lift a maximum of ten pounds, (Tr. 308), yet assessed 5/5 musculoskeletal strength in all four extremities, except "slight weakness" on the right hand. (Tr. 312). Dr. Aung's findings were based on one physical examination of Mr. McGinnis and, as the ALJ correctly pointed out, her findings were not supported by any diagnostic tests. *See* (Tr. 307). While the ALJ did not credit Dr. Aung's findings with regard to hand actions such as simple grasping and pushing, the ALJ did impose manipulative limitations in the RFC assessment to account for evidence of "decreased grip strength" in Mr. McGinnis's right hand. (Tr. 20). I find that the ALJ adequately explained his assignment of weight, and that his conclusion was supported by substantial evidence. Accordingly, remand is not warranted on this issue.

Contrary to Mr. McGinnis's argument, the ALJ's assignment of less weight to the opinions of Dr. Nwachinemere and Dr. Aung, than to the opinions of non-examining state agency medical consultants, is not erroneous. *See* Pl.'s Mot. 16-17. The opinions of state agency medical consultants are given weight "only insofar as they are supported by evidence in the record, considering such factors as the supportability of the opinion in the evidence...the consistency of the opinion with the record as a whole, and any explanation for the opinions provided by the State agency medical...consultant." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). In certain circumstances, the opinions of state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. *Id.* at *3. Here, the ALJ reasoned that the opinions of the state agency medical consultants were "consistent with the clinical and objective findings of record and comport[ed] with the claimant's estimate that he is able to lift about 40 pounds." (Tr. 21).

The ALJ's decision to assign "significant weight" to the opinions of the state agency medical consultants is supported by substantial evidence. (Tr. 21). The three Physical RFC Assessments, which were completed by state agency medical consultants, are largely consistent with one another. Each assessment states that Mr. McGinnis can occasionally lift 20 pounds, can frequently lift 10 pounds, and can sit, stand, or walk about six hours in an eight-hour workday. *See* (Tr. 256, 274, 295). The assessments differ slightly in the postural and manipulative limitations imposed. Two of the assessments concluded that Mr. McGinnis was limited in reaching all directions, while one assessment concluded that no manipulative limitations were

---

[1] The physician who provided the Medical Report Form 402B, *see* (Tr. 307-10) is identified in the record both as Dr. Pamela Aung, and Dr. Pamela Nung. *See* (index, Tr. 306, 310). In their motions for summary judgment, the parties refer to her as Dr. Pamela Aung, whereas the ALJ refers to her as Dr. Pamela Nung. *See* (Tr. 21). I have adopted the parties' spelling.

established. *See* (Tr. 258, 276, 297). The assessments generally agreed that some postural limitations were appropriate, though the limitations were not severe. *See* (Tr. 257, 275, 296). The medical evidence of record supports these conclusions. With the exception of some right-hand weakness, Mr. McGinnis has exhibited normal motor strength and normal upper and lower extremity strength. *See* (Tr. 248, 267, 269, 290, 312, 317, 318, 319, 320, 351, 352, 377, 385, 386, 388, 389, 393, 395-96, 398, 400-01, 403, 409, 411, 414-15, 418, 447). Mr. McGinnis reported that he can lift 40 pounds, and that he can complete household repairs and light yard work. (Tr. 210, 213). There is limited evidence that Mr. McGinnis has difficulty with ambulation. (Tr. 267, 290-91). However, he does not use a cane, or walker and testified to occasionally walking an eighth of a mile to the grocery store. *See* (Tr. 38-39, 291). There is no medical evidence of record which contradicts the findings of the state agency medical consultants. In fact, the ALJ imposed greater postural limitations than any state agency medical consultant recommended. *See* (Tr. 16).

Briefly, I address Mr. McGinnis's argument that much of the objective medical evidence was entered after the state agency consultants conducted their review. Pl.'s Mot. 17. While Mr. McGinnis is correct that some evidence of record was submitted after May 25, 2010, the date of the most recent Physical RFC Assessment, the evidence that was before the state agency medical consultants accurately reflected Mr. McGinnis's impairments. The Physical RFC assessment dated May 25, 2010, included consideration of Dr. Young's May, 2010 Consultative Examination Report, *see* (Tr. 289-91), and X-ray imaging from American Radiology. (Tr. 239). The Physical RFC Assessment, dated January 20, 2009, considered evidence of Mr. McGinnis's cervical fusion, and Dr. Young's September, 2008 Consultative Examination Report. *See* (Tr. 266-70, 274). The medical evidence entered subsequent to the state agency medical consultants' review does not contradict their conclusions, and does not therefore undermine the ALJ's assignment of weight.

Second, Mr. McGinnis argues that the ALJ's conclusion that he can perform the jobs of escort car driver and surveillance system monitor is inconsistent with the RFC assessment, and at odds with the medical evidence of record. Pl.'s Mot. 18. Mr. McGinnis first contends that it was erroneous for the ALJ to conclude that, because he is capable of light work, he is also capable of sedentary work. Pl.'s Mot. 18-19. The ALJ did not make the leap of logic that Mr. McGinnis suggests. It is apparent from the testimony that the ALJ inquired into the types of jobs that would be available to a claimant who is restricted to light work, and who also cannot reach overhead with the dominant hand, or use the dominant hand for more than an hour in an eight-hour day. *See* (Tr. 54-55). From this hypothetical, the VE concluded that two sedentary positions would be available – that of an escort vehicle driver and a surveillance system monitor. (Tr. 55). Thus, it is clear that the ALJ did not presume that Mr. McGinnis could perform the sedentary positions described merely because they were of a lower exertional requirement.

Mr. McGinnis also points to several purported inconsistencies between the ALJ's RFC assessment and his alleged functional limitations. He first notes that he is unable to sit for long periods of time, which is required of escort vehicle drivers and surveillance system monitors. Pl.'s Mot. 19. He also notes that his prescribed medications cause dizziness and drowsiness,

which would preclude work in those positions. Pl.'s Mot. 20. He further states that the RFC assessment limits the use of his dominant hand to one hour in an eight-hour workday, and that the safe operation of a vehicle requires the use of two hands. *Id.* at 21. The ALJ's RFC assessment also requires Mr. McGinnis to avoid work with hazardous machinery, yet Mr. McGinnis notes that an escort driver must work around large trucks hauling mobile homes. *Id.*

The ALJ properly omitted any restrictions in the RFC assessment related to dizziness, drowsiness, or sitting for long periods of time, because the ALJ did not find Mr. McGinnis's subjective complaints credible. First, Mr. McGinnis's testimony regarding his alleged dizziness and drowsiness was contradictory. At one point during the hearing, Mr. McGinnis could not recall his own symptoms from pain medication. (Tr. 42).[2] Then, Mr. McGinnis suggested that his dizziness occurred not after taking pain medication, but upon waking in the morning. *See* (Tr. 44). The ALJ also noted that Mr. McGinnis reported that his vertigo and dizziness resolved during the course of the day. (Tr. 19). Furthermore, the ALJ pointed out that none of Mr. McGinnis's most recent prescriptions included any narcotic medication. (Tr. 55-56). Although some of Mr. McGinnis's medications list dizziness and drowsiness as possible side effects, *see* (Tr. 475-78), the ALJ did not find Mr. McGinnis's statements concerning his symptoms credible.

Second, contrary to Mr. McGinnis's complaints, the ALJ found that Mr. McGinnis could sit for six hours in an eight-hour workday. (Tr. 16). This conclusion was based on the medical evidence of record and a comprehensive credibility analysis. As noted earlier, the ALJ assigned great weight to the opinions of state agency medical consultants who found that Mr. McGinnis could sit for about six hours in an eight-hour workday. The ALJ also found that Mr. McGinnis's statements regarding his inability to sit for long periods of time were not credible. Mr. McGinnis stated that he could only sit for a total of 20-25 minutes before needing to move around to alleviate pain, yet he testified that he sits in a chair to watch television much of the day, *see* (Tr. 42), and he sat during the entire 45-minute hearing. *See* (Tr. 20-21) (stating that Mr. McGinnis showed no evidence of pain or discomfort during the hearing, but that the ALJ's observations were "only one factor among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations").

I find that the ALJ's RFC assessment was based on substantial evidence, and that the ALJ's colloquy with the VE was based on well-supported medical evidence. Therefore, I find no error with the ALJ's decision to exclude restrictions in the RFC assessment related to Mr. McGinnis's alleged dizziness, drowsiness, or inability to sit for long periods of time. However, I agree with Mr. McGinnis that the ALJ should have inquired further into whether a person with

---

[2]**Claimant's Representative:** Would you have any side effects from the medication?
**McGinnis:** Right.
**Claimant's Representative:** What would those be?
**McGinnis:** Dizziness, I think it's dizziness and what is that other—dizziness and I can't think of the other one that's on that medication. It causes—
**ALJ:** You don't know what your symptoms are from taking pain medicine.
**McGinnis:** I get dizzy, drowsy, and I just sit there in the chair. I don't do a whole lot of nothing but sit there and watch TV. (Tr. 42-43).

Mr. McGinnis's dominant hand limitations could perform the job of escort vehicle driver, which requires the individual to "escort trucks hauling mobile homes on public thoroughfares" and to "communicate[s] by two-way radio with truck and other pilot vehicle drivers..." (DOT No. 919.663-022). Even if reliance on this job was in error, however, the error is harmless, as Mr. McGinnis is capable of performing the job of a surveillance system monitor. The VE testified that there are 80,000 such positions available nationally and 1,300 positions available in Maryland. (Tr. 55). I find that this work exists in significant numbers so as to render the ALJ's finding that Mr. McGinnis is not disabled, supported by substantial evidence. *Cf. Lawler v. Astrue,* No. 09–1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75–100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy"); *Hicks v. Califano,* 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number).

For the reasons set forth herein, Mr. McGinnis's motion for summary judgment (ECF No. 14) will be DENIED and Defendant's motion for summary judgment (ECF No. 16) will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge